FILED
IN OPEN COURT

MAR 3 1 2011

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 1:11cr162 |
| SEAN W. RAGLAND | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant, SEAN RAGLAND, agree that had this matter proceeded to trial the United States would have proven the facts set forth in this Statement of Facts beyond a reasonable doubt. Unless otherwise stated, the time periods for the facts set forth herein are at all times relevant to the charges in the Information.

I.  Overview

1. Defendant began working at Taylor, Bean & Whitaker Mortgage Corp. (TBW) in Ocala, Florida in 2002. In 2004, defendant joined the Accounting Department, and shortly thereafter was promoted to Senior Financial Analyst and reported to the Chief Financial Officer. In or about 2005, the defendant was assigned responsibilities for reporting and tracking issues related to the Ocala Funding, LLC facility (Ocala Funding).

2. From in or about 2006 through in or about August 2009, co-conspirators, including the defendant, engaged in a scheme to defraud financial institutions that had invested in Ocala Funding. One of the goals of the scheme to defraud was to mislead investors and auditors as to the financial health of Ocala Funding. This aspect of the fraud scheme allowed TBW to misappropriate over $1 billion in collateral from Ocala Funding. By participating in the

fraud scheme described below, the defendant knowingly and intentionally placed financial institution investors in Ocala Funding at significant risk of incurring losses as a result of the scheme.

II.  Ocala Funding

3.  In or about January 2005, TBW established a wholly-owned special purpose entity called Ocala Funding. Ocala Funding was a bankruptcy remote facility designed to provide TBW additional funding for mortgage loans. The facility obtained funds for mortgage lending from the sale of asset-backed commercial paper to financial institutions, including Deutsche Bank and BNP Paribas.

4.  Ocala Funding was managed by TBW and had no employees of its own. The defendant was one of the TBW employees responsible for preparing monthly reports relating to the assets and outstanding liabilities in Ocala Funding in connection with the issuance and rolling of commercial paper and for coordinating wire transfers related to Ocala Funding. When preparing the reports, the defendant knew and understood that Ocala Funding's assets, including mortgage loans and cash, had to be greater than or equal to its liabilities, including outstanding commercial paper held by the financial institutions and a relatively small amount of subordinated debt.

5.  Shortly after Ocala Funding was established, the defendant learned that there was a shortage of assets in Ocala Funding and the defendant began tracking this "hole" on his own initiative. The hole grew significantly over time and by June 2008, the hole had grown to over $700 million. The defendant kept the CEO and CFO informed as to the size of the hole.

6.  To cover up the hole at the direction of other co-conspirators, the defendant prepared documents that inaccurately and intentionally inflated figures representing the

aggregate value of the loans held in the Ocala Funding facility or under-reported the amount of outstanding commercial paper. The defendant sent this false information to the financial institution investors, including Deutsche Bank and BNP Paribas, and to other third parties. By doing so, the defendant and co-conspirators misled investors into believing that there was sufficient cash and mortgage loan collateral to back the outstanding commercial paper owned by the investors.

7. At the direction of a co-conspirator, the defendant also sent the false reports to an outside audit firm that reviewed financial reports related to the Ocala Funding facility.

8. The defendant also learned that co-conspirators were transferring hundreds of millions of dollars from Ocala Funding bank accounts, located at LaSalle Bank, to TBW accounts, including the TBW operating account. These transfers contributed to the hole in Ocala Funding.

9. As the government would prove at a trial, at the time that Ocala Funding ceased operations, there was a hole of approximately $1.5 billion.

10. The defendant did not personally receive any funds TBW misappropriated from Ocala Funding.

III. Conclusion

11. The defendant admits that this statement of facts does not represent and is not intended to represent an exhaustive factual recitation of all the facts about which he has knowledge relating to the scheme to defraud as described herein.

12. The defendant admits that his actions, as recounted herein, were in all respects intentional and deliberate, reflecting an intention to do something the law forbids, and were not in any way the product of any accident or mistake of law or fact.

Denis J. McInerney
Chief, Criminal Division, Fraud Section
United States Department of Justice

By: _____
Patrick F. Stokes, Deputy Chief
Robert Zink, Trial Attorney


Neil H. MacBride
United States Attorney

By: _____
Charles F. Connolly
Paul J. Nathanson
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, SEAN RAGLAND, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate to the best of my knowledge, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: March 31, 2011

_____
Sean Ragland
Defendant

I am SEAN RAGLAND's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: March 31, 2011

_____
Fred Sinclair, Esq.
Fritz Scheller, Esq.
Counsel for the Defendant